# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

JUAN MANUEL LOPEZ-CAMPOS,

                 Petitioner,               Case No. 2:25-cv-12486

v.                                     Hon. Brandy R. McMillion
                                       United States District Judge

KEVIN RAYCRAFT, *et al.*,

                 Respondents.

_____/

## OPINION AND ORDER GRANTING
## WRIT OF HABEAS CORPUS (ECF NO. 1)

Petitioner Juan Manuel Lopez-Campos ("Lopez-Campos" or "Petitioner") has filed a Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241, alleging he is being unlawfully detained at the Monroe County Jail in violation of the Immigration and Nationality Act ("INA").  *See generally* ECF No. 1.  Lopez-Campos, a Mexican citizen, is pending immigration proceedings to remove him from the United States.  Despite having been in this country for over twenty-five years, raising five children who are all U.S. citizens, maintaining steady employment, serving those in his community, and never engaging in criminal activity,

1

Respondents[1] are holding Lopez-Campos and refusing to provide him with a bond hearing pending his removal proceedings. For the reasons below, this Court finds that Lopez-Campos' detention without a bond hearing is unlawful, a violation of his due process rights, and orders his immediate release, or in the alternative, a bond hearing within seven (7) days. Accordingly, his Petition for Writ of Habeas Corpus (ECF No. 1) is **GRANTED**.

## I.

Lopez-Campos is a 46-year-old man born in Mexico, who has resided in the United States since at least 1999. ECF No. 1, PageID.8. He is the primary caregiver and father of five children, all of whom are U.S. citizens residing in Michigan. *Id.* Lopez-Campos has held various jobs in the retail and service industries, most recently working as a tape edge processor at a mattress company since 2013. *Id.* He is heavily involved in his community, volunteering weekly at his church and distributing food to those in need. *Id.* Other than a pending first-time misdemeanor traffic violation (which initiated the instant litigation), Lopez-Campos has no criminal history. *Id.*

---

[1] Petitioner files this action against Kevin Raycraft, Acting Field Director of Enforcement and Removal Operation ("ERO"), Detroit Field Office, Immigration and Customs Enforcement ("ICE"); Kristi Noem, Secretary, U.S. Department of Homeland Security; U.S. Department of Homeland Security ("DHS"); Pamela Bondi, U.S. Attorney General; and the Executive Office for Immigration Review ("EOIR") (collectively, "Respondents" or "the Government").

On June 25, 2025, Romulus Police Department pulled Lopez-Campos over for allegedly passing a vehicle improperly. ECF No. 1, PageID.8. During the traffic stop, a Romulus police officer contacted U.S. Customs & Boarder Protection ("CBP") to verify Lopez-Campos' immigration status. *Id.* at PageID.9. CBP arrived on the scene, arrested Lopez-Campos, and took him into custody. *Id.* CBP held Lopez-Campos at the Gibraltar Border Patrol Station until releasing him into ICE custody on July 2, 2025. *Id.*; *see also* ECF No. 9-2, PageID.95. ICE is currently holding Lopez-Campos at the Monroe County Jail.

Also on June 25, 2025, DHS initiated immigration removal proceedings before the Detroit Immigration Court, pursuant to 8 U.S.C. § 1229a. ECF No. 1, PageID.9. Lopez-Campos was charged under 8 U.S.C. § 1182(a)(6)(A)(i) as being present in the U.S. without being admitted or paroled. *Id.* In the Notice to Appear, DHS alleged the following:

1. You are not a citizen or national of the United States;
2. You are a native of MEXICO and a citizen of MEXICO;
3. You arrived in the United States at or near UNKNOWN PLACE, on or about unknown date;
4. You were not then admitted or paroled after inspection by an Immigration Officer.

*See* ECF No. 11-1, PageID.128. The Notice to Appear went on to state that Lopez-Campos was subject to removal pursuant to:

"212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended, in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United

States at any time or place other than as designated by the Attorney General."

*Id.* The warrant and notice issued to Lopez-Campos cited Section 236 of the INA as the authority for his detention. *See* ECF No. 9-2, PageID.96.

On July 8, 2025, ICE, in coordination with DOJ, issued a new policy entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission," requiring all noncitizens who entered the United States without inspection to be subject to mandatory detention without bond. ECF No. 1, PageID.13. The policy applies this detention framework to any noncitizen regardless of when or where they are apprehended. *Id.*

After having been placed in ICE custody, Lopez-Campos requested a bond redetermination hearing in front of an Immigration Judge ("IJ"). *Id.* On August 6, 2025, at a master calendar hearing, the IJ, applying this new policy, issued an order denying Lopez-Campos' "request[] [for] a custody redetermination." ECF No. 1-1, PageID.22; *see also* ECF No. 9-2, PageID.96. The reason listed in the IJ's order was included in a check box and simply stated: "Denied, because Applicant for admission. No jurisdiction." ECF No. 1-1, PageID.22. Lopez-Campos reserved his right to appeal this decision before the Board of Immigration Appeals, and DHS waived any right to appeal. *Id.* at PageID.23; *see also* ECF No. 9-2, PageID.97.

On August 11, 2025, Lopez-Campos filed a petition for habeas corpus before this Court, pursuant to 28 U.S.C. § 2241. ECF No. 1. His petition alleges violations

4

of the INA and the Fifth Amendment Due Process Clause.  *See id.* at PageID.17-18.

Lopez-Campos argues that as a non-citizen residing in the United States, charged as

inadmissible for having entered the country without inspection, 8 U.S.C. § 1226(a)

allows for his release on conditional parole or bond pending removal hearings, after

a detention hearing to evaluate his risk of flight and dangerousness.  *See generally*

ECF Nos. 1, 11.  The Government asserts that under 8 U.S.C. § 1225(b)(2)(A),

Lopez-Campos is properly detained because he falls in a category of noncitizens that

the statute mandates be detained pending removal proceedings.  *See generally* ECF

No. 9.  Lopez-Campos seeks immediate release from custody or, in the alternative,

a bond hearing; and he ask this Court to declare that 8 U.S.C. § 1226(a) – and not 8

U.S.C. § 1225(b)(2)(A) – is the appropriate statutory provision that governs his

detention and eligibility for bond.  ECF No. 1, PageID.19.

On August 27, 2025, the Court held a hearing, taking the petition and the

parties' corresponding/subsequent briefs under advisement.  That same day, the

Court issued a bench order enjoining Respondents from transferring or removing

Lopez-Campos from the district until the Court could rule on the pending habeas

petition.  The petition is now ripe for decision.

## II.

Habeas relief is available when a person is "in custody in violation of the

Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

Lopez-Campos seeks habeas relief arguing he is being unlawfully detained in violation of the INA, as Respondents are "erroneously interpreting the INA to mandate detention without the possibility of bond for noncitizens who entered the United States without inspection, even if they have been residing here for years." ECF No. 1, PageID.2.

Congress established two statutes which principally govern detention of noncitizens pending removal proceedings.  8 U.S.C. §§ 1225 and 1226.  The first – Section 1225 – is a mandatory detention provision that states, in relevant part:

> **(2)  INSPECTION OF OTHER ALIENS**
> **(A)  In general**
>
> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A).  Key to the issues raised here, Section 1225 applies to "applicants for admission," who are noncitizens "present in the United States who [have] not been admitted."  8 U.S.C. § 1225(a)(1).  All applicants for admission must undergo screening by an examining immigration officer, and if it is determined that the applicant for admission "is not clearly and beyond a doubt entitled to be admitted," they "***shall*** be detained for" standard removal proceedings.  8 U.S.C. § 1225(b)(2)(A) (emphasis added).  The only exception to this mandatory detention

provision is for noncitizens who are released "for urgent humanitarian reasons or significant public benefit."  8 U.S.C. § 1182(d)(5)(A).

The second statutory provision – Section 1226 – provides for a discretionary detention framework.  It states, in relevant part:

> **(a) ARREST, DETENTION, AND RELEASE**
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>
> (1)  may continue to detain the arrested alien; and
>
> (2)  may release the alien on—
>
>> (A)  bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General …

8 U.S.C. § 1226(a).  Subsection (c) of the Section 1226 prohibits certain noncitizens who are inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) by virtue of their presence in the country without being admitted (like Petitioner) from being released on bond, *but only if* the noncitizen has also been:

> charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person.

8 U.S.C. § 1226(c)(1)(E)[2].  Relevant here, noncitizens arrested and detained under Section 1226 have a right to request a custody redetermination (i.e. a bond hearing) before an Immigration Judge.  *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1).  The IJ evaluates whether there is a risk of nonappearance or danger to the community.  *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006).

## III.

## A.   ADMINISTRATIVE EXHAUSTION

Before determining the merits of this petition, the Court must first address Respondents' argument that it should require Petitioner to exhaust his administrative remedies (*e.g.* appeal the IJ's decision to deny him a bond hearing to the Board of Immigration Appeals), before Lopez-Campos is permitted to proceed with his habeas petition.  *See* ECF No. 9, PageID.76.  The Court disagrees exhaustion is necessary.

"Where Congress specifically mandates, exhaustion is required."  *McCarthy v. Madigan*, 503 U.S. 140, 144 (1991).  But when it is not mandated, the decision to require exhaustion is within the sound discretion of the court.  *Id.; see also Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013).  Exhaustion requirements not written into the text of the statute are prudential.  *See Perkovic v. I.N.S.*, 33 F.3d 615, 619

---

[2] This section that subjects certain noncitizens to mandatory detention was added by Congress in January 2025 with the passing of the Laken Riley Act.  Pub. L. No. 119-1, 139 Stat. 3 (2025).

(6th Cir. 1994). "Prudential exhaustion is a judge-made doctrine that enables courts to require administrative exhaustion even when the statute or regulations do not." *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 747 (6th Cir. 2019).

The Sixth Circuit has not formally adopted a standard for determining when prudential exhaustion applies; however, other courts in this district have applied the three factor test, set forth in *United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983) (derived from *McGee v. United States*, 402 U.S. 479, 484 (1971); *McKart v. United States*, 395 U.S. 185, 193-95 (1969)). Courts may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
>
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
>
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*See Shweika v. Dep't of Homeland Sec.*, No. 1:06-cv-11781, 2015 WL 6541689, at *12 (E.D. Mich. Oct. 29, 2015). Here, all three factors weigh against requiring exhaustion. First, the issues raised in the habeas petition are purely legal in nature and do not require the agency to develop the record. Second, because Lopez-Campos' habeas petition includes a due process claim, the administrative scheme (*i.e.* appeal to the BIA) is likely futile. And third, administrative review is not likely to change Respondents' position that Section 1225(b)(2)(A) applies in this context.

The Government's immigration policy makes clear that mandatory detention is the position to be taken, and this is being done in conjunction with the Department of Justice.

Further, while the Court would ordinarily enforce the exhaustion doctrine when it serves the dual purpose of promoting judicial economy and protecting administrative agency authority, waiver is appropriate when the interests of the individual weigh heavily against requiring administrative exhaustion, or exhaustion would be futile and unable to afford the petitioner the relief he seeks. *See McCarthy*, 503 U.S. at 145; *see also Fazzani v. NE Ohio Corr. Ctr.*, 473 F.3d 229 (6th Cir. 2006) (citing *Aron v. LaManna*, 4 F. App'x 232, 233 (6th Cir. 2001) and *Goar v. Civiletti*, 688 F.2d 27, 28-29 (6th Cir. 1982)); *Shawnee Coal Co. v. Andrus*, 661 F.2d 1083, 1093 (6th Cir. 1981).  Exhaustion is also excused when delay means hardship. *See Shalala v. Illinois Council*, 529 U.S. 1, 13 (2000).

Bond appeals before the BIA, on average, take six months to complete. *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1245 (W.D. Wash. 2025).  Requiring Lopez-Campos to wait six months to reach a decision on whether he is entitled to a bond hearing would be futile.  He has a Merits Hearing set for October 2, 2025 – less than six months from now.  ECF 9-2, PageID.97.  As such, exhaustion would not effectively afford him the relief he seeks, given that a removal determination would likely come before the BIA's determination of whether he is entitled to a bond

hearing.  Therefore, its unmistakable that waiver is appropriate because depriving Lopez-Campos of his liberty while awaiting a BIA appeal decision certainly equates to hardship.  And any delay results in the very harm Lopez-Campos is trying to avoid by seeking the bond hearing – detention.

Aside from waiver, the Sixth Circuit has also previously held that a due process challenge generally does not require exhaustion since the BIA lacks authority to review constitutional challenges. *See Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006); *accord Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006) ("exhaustion of administrative remedies may not be required in cases of non-frivolous constitutional challenges to an agency's procedures.") (citation omitted). Since Lopez-Campos' petition includes a due process claim, an appeal to the BIA would be pointless.  The fact that Lopez-Campos has reserved his right to appeal the denial of a detention hearing to the BIA does not dissuade the Court from exercising its discretion to decide this habeas petition.  Furthermore, this Court has previously waived the exhaustion requirements in similar proceedings. *See Shweika*, 2015 WL 6541689 at *13.

Respondents argue that the BIA is currently taking up the issue relating to the scope of Section1225(b)(2)(A) and Section1226(a) in a pending appeal, where they have sought supplemental briefing. *See* ECF No. 9 (citing letter from BIA, ECF No. 9-3, PageID.99)).  However, with the case number redacted, the Court has no way

11

to know the status of that appeal.  What the Court can discern is that supplemental briefing was requested on July 18, 2025 (due to that court on August 8, 2025) and as of the date of this Order, the Court has been provided with no indication that the BIA has ruled on this issue.  The petitioner there has presumably been in custody for at least 6 weeks, but likely more.  When the liberty of a person is at stake, every day that passes is a critical one, and the Court cannot fault Lopez-Campos for taking appropriate measures to pursue his claims through the habeas process, with the expectation that his claims would be met with a sense of urgency, and he would receive a decision in a more expedient manner.

Because exhaustion would be futile and unable to provide Lopez-Campos with the relief he requests in a timely manner, the Court waives administrative exhaustion and will address the merits of the habeas petition.

## B.   STATUTORY INTERPRETATION

The central question to this habeas petition is which detention framework properly applies to a Mexican citizen, who has lived in the United States for over twenty-five years, was never lawfully admitted to the country, was arrested during a routine traffic stop, and is now facing removal proceedings.  Government says Section 1225(b)(2)(A), Lopez-Campos says Section 1226(a).

So, how did we get here?  For the past 30 years, the Government has applied Section 1226(a) in seeking detention in this context, even though, as Respondents'

council represented at the hearing, they believed they had the discretion to also apply Section 1225(b)(2)(A). Now that Respondents' immigration policy has changed and Section 1225(b)(2)(A) is more favorable, they want the Court to declare that the application of Section 1226(a) is incorrect. Respondents can't have it both ways. The plain language of the statutes, the overall structure, the intent of Congress, and over 30 years of agency action make clear that Section 1226(a) is the appropriate statutory framework for determining bond for noncitizens who are already in the country and facing removal.

The issue before the Court boils down to one of statutory interpretation and the harmonization of Sections 1225 and 1226 of the INA. "A statute should be construed so that effect is given to all its provisions[.]" *Corley v. United States*, 556 U.S. 303, 314 (2009); *Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (discussing how courts "must give effect to the clear meaning of statutes as written."). Each word within the statute must be given "'it's ordinary, contemporary, common meaning,' while keeping in mind that 'statutory language has meaning only in context.'" *Kentucky v. Biden*, 23 F.4th at 603 (citing *Walters v. Metro Edu. Enters., Inc.*, 519 U.S. 202, 207 (1997); *Graham Cnty. Soil & Water Conservation Dist. et al. v. United States ex rel. Wilson*, 545 U.S. 409, 415 (2005)). "The words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Roberts v. Sea-land Servs., Inc.*, 566 U.S. 93, 101 (2012). Courts

must also "use every tool at their disposal to determine the best reading of the statute." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). In doing so here, the Court must determine whether Lopez-Campos is lawfully detained under Section 1225(b)(2)(A), as Respondents claim. And the Court answers no.

As always, we begin with the language of the statute. The plain text of Section 1225(b)(2)(A) and Section 1226(a) do not support Respondents' contention that mandatory detention applies to "noncitizens [like Lopez-Campos] who have already entered the United States unlawfully" as opposed to those "in the process of initially arriving." ECF No. 9, PageID.80-81. Section 1225(b) applies to "Inspection for applicants for admission," and subsection (1) governs "Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled." Section 1226 applies to the "Apprehension and detention of aliens." Respondents take the position that the Court should ignore the section headings because they are not binding on how the statute should be interpreted. While not binding, they are instructive and provide the Court with the necessary assurance that it is at least applying the right part of the statute in a given circumstance. *See Merit Mang. Grp, LP v. FIT Consulting, Inc.*, 583 U.S. 366, 380 (2018); *Dubin v. United States*, 599 U.S. 110, 120-21 (2023) ("This Court has long considered that the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute.")

Looking to Section 1225(b)(2)(A), when dealing with "inspection and removal of arriving aliens," immigration officials "shall" detain "an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). Respondents argue that the term "applicant for admission" is defined as any "noncitizen present in the United States who has not been admitted," and therefore it applies to anyone here unlawfully, even if they are already physically present. *See id.* at PageID.81 (citing 8 U.S.C. § 1225(a)(1), *Dep't of Homeland Sec. v. Thursiddigiam*, 591 U.S. 103, 139 (2020)). They similarly argue that "alien seeking admission" is described as only referencing "lawful entry… without regard to where or when that right may be granted" and does not refer to a noncitizen "physically crossing the border into the country." *Id.* (citing 8 U.S.C. § 1101(a)(13)(A). So, under Respondents' interpretation, Section 1225(b)(2)(A) requires detention of any noncitizen "present" in the country who has not been lawfully admitted. The Court finds this much too broad.

Respondents completely ignore the term "seeking" when attempting to broaden what "seeking admission" means. This implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection. Noncitizens who are just "present" in the country – those like Lopez-Campos, who have been here for years upon years and never proceeded to

obtain any form of citizenship (*e.g.* asylum, permanent residency, refugee status, visas, etc.) – are not "seeking" admission.   True, they may technically be "a noncitizen present in the United States who has not been admitted" to make them an "applicant for admission" but these are not interchangeable.   The statute also requires that an "examining immigration officer" determine that the noncitizen is "seeking admission."   That was not and could not have been done under the facts and circumstances of this case.

Even applying Respondents' application of the definition of "admission," the result would not differ.   Respondents state that "admission" is defined in the INA as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."   ECF No. 9, PageID.82 (citing 8 U.S.C. § 101(a)(13)(A)).   They argue therefore that "seeking admission" is not about "physically crossing the border," but instead about obtaining "lawful entry" such as "a visa or grant of refugee status which are ways noncitizens can make 'lawful entry.'"   *Id*. at PageID.81-82.   This isn't the case for Lopez-Campos either.   There is nothing in the record to suggest that he ever attempted to gain lawful entry (e.g. lawful status in this country) until he was apprehended and detained.   Therefore, the Court finds that 1225(b)(2)(A) applies when people are being inspected, which usually occurs at the border, when they are seeking lawful entry into this country.   Lopez-Campos was driving his vehicle within the United States, twenty-six years

after arriving. There is no logical interpretation that would find that Lopez-Campos was actively "seeking admission" after having resided here, albeit unlawfully, for twenty-six years.

On the other hand, looking to the plain language of Section 1226, when dealing with "apprehension and detention of aliens," upon "a warrant issued by the Attorney General, an alien may be arrested or detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). This provision is clearly applicable, as Lopez-Campos was apprehended during a traffic stop, arrested and detained. He is pending removal proceedings in the Immigration Court, therefore the Attorney General, "may continue to detain" and "may release on bond." While this language is discretionary, the statute provides that the noncitizen has the right to request a custody redetermination (i.e., bond hearing) before an IJ – which is precisely what Lopez-Campos has done. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1).

The Supreme Court has also looked at these statutes and clarified that they apply in different circumstances. *See Jennings v. Rodriguez*, 583 U.S. 281, 287-88 (2018). Section 1225 is "framed [] as a part of the process that 'generally begins at the Nation's borders and ports of entry, where the Government must determine whether [noncitizens] seeking to enter the country are admissible.'" *Rosado v. Figueroa, et al.*, No. 2:25-cv-02157-DLR-CDB, 2025 WL 2337099, at *8 (citing

*Jennings*, 583 U.S. at 287).   Whereas Section 1226(a) applies to the process of "arresting and detaining" noncitizens who are already living "inside the United States" but still subject to removal.  *Jennings*, 538 at 288.  Put simply, Section 1225 applies to noncitizens "arriving to the country" and Section 1226 governs detention of noncitizens "already in the country."  *Id*.

Looking to the facts of this case, it is undisputed that Lopez-Campos, by definition, is a noncitizen "present in the United States who has not been admitted or paroled."  8 U.S.C. § 1182(a)(6)(A).  Respondents concede that they do not know when Lopez-Campos arrived in the U.S.  *See* ECF No. 9, PageID.72, ECF No. 9-2, PageID.95.  But Lopez-Campos states that he has resided here for more than twenty-five years.  ECF No. 1, PageID.6.  And Lopez-Campos was apprehended during a traffic stop in Romulus, Michigan.  *Id.* at PageID.8-9.  Under these circumstances, it cannot be said that Section 1225(b)(2)(A) applies to him.  Lopez-Campos was not "arriving to the country" or found at the border or a port of entry.  Quite the contrary, he was apprehended during a traffic stop, "already in the country," after living and being present in the United States for a substantial period of time, making Section 1226 applicable.  *See Jennings*, 538 at 288.

The record further supports this interpretation.  On June 25, 2025, upon Lopez-Campos's arrest, he was provided with a Form I-200 (Warrant or Arrest of Ailen) and a Form I-286 (Notice of Custody Determination).   ECF No. 9-2,

PageID.96.  Respondents initiated immigration proceedings with the filing of Form I-862 (Notice to Appear).  The Warrant and Notice of Custody Determination cited INA § 236 (codified at 8 U.S.C. § 1226) as the authority for Lopez-Campos' detention.  *See* ECF No. 9-2, PageID.96.  Notably, on his Notice to Appear, Respondents checked the box labeled "You are an alien ***present*** in the United States who has not been admitted or paroled" rather than checking the box labeled "***arriving*** citizen."  ECF No. 11-1, PageID.128 (emphasis added).  This further supports the Court's conclusion that Section 1226(a), as opposed to 1225(b)(2)(A), is applicable to this case.  Which makes sense because Section 1225(b)(2)(A) would correspond to those "arriving," while Section 1226(a) would correspond to those "present."  It was not until Lopez-Campos requested a custody redetermination hearing (bond hearing) that Respondents claimed his detention was under Section 1225(b)(2)(A).  The Court cannot credit this new position that was adopted post-hac, despite clear indication that Lopez-Campos was not detained under this provision. *Cf. Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 22, 24 (2020) (holding that, under arbitrary and capricious review in the administrative law context, "[t]he basic rule is clear: [a]n agency must defend its actions based on the

reasons it gave when it acted," not on "impermissible post hoc rationalizations").[3]

And several courts addressing this very issue have held the same.[4]

Additionally, the Court cannot ignore Congressional intent.  If Congress had intended for Section 1225 to govern all noncitizens present in the country, who had not been admitted, then it would not have recently adopted an amendment to Section 1226 that prescribes a subset of noncitizens be exempt from the discretionary bond framework.  The Laken Riley Act added a subsection to Section 1226 that specifically mandated detention for noncitizens who are inadmissible under Sections 1182(a)(6)(A) (noncitizens present in the United States without being admitted or paroled, like Lopez-Campos), 1182(a)(6)(C) (misrepresentation), or 1182(a)(7) (lacking valid documentation) ***and*** have been arrested for, charged with, or convicted of certain crimes.  *See* 8 U.S.C. § 1226(c)(1)(E).  Respondents' interpretation of the statutes would render this recently amended section superfluous. As another court recently held,

---

[3] *See Lopez Benitez v. Francis et al.*, ---F.Supp.3d----, No. 1:25-cv-05937-DEH, 2025 WL 2371588, at *5 (S.D.N.Y. Aug. 13, 2025).

[4] *See Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299, at *8 n.9 (D. Mass. July 7, 2025) ("DHS cannot convert the statutory authority governing . . . detention from [Section 1225(b)] to [Section 1226(a)] through the post-hoc issuance of a warrant." (citing *Matter of Q. Li*, 29 I. & N. Dec. 66, 69 n.4 (BIA 2025)); *Martinez v. Hyde*, ---F. Supp. 3d ---, 1:25-cv-11613-BEM, 2025 WL 208438 (D. Mass. July 24, 2025) ("[S]ection 1125(b)(2) cannot be read to mandate detention of non-citizens already present within the United States, based on certain inadmissibility grounds, as that would nullify a recent amendment to the immigration statues."); *Lopez Benitez*, 2025 WL 2371588 at *5 ("The Court cannot credit Respondents' new position as to the basis for Mr. Lopez Benitez's detention, which was adopted post hoc and raised for the first time in this litigation.").

The plain text of Section 1226(a)—which provides that, following a noncitizen's arrest on a warrant, the Attorney General "may" detain the noncitizen, "may" release him on bond, or "may" release him on conditional parole, 8 U.S.C. §§ 1226(a)(1)-(2)—indicates Congress's intent to establish a discretionary, rather than mandatory, detention framework for noncitizens arrested on a warrant. *See Jennings*, 583 U.S. at 300 (" 'the word "may" ... implies discretion,' " whereas " 'the word "shall" usually connotes a requirement' " (quoting *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016))). And while Section 1226(a) expressly carves out certain "criminal" noncitizens from its discretionary framework, it does not similarly carve out noncitizens who would be subject to mandatory detention under Section 1225(b)(2). *See* 8 U.S.C. § 1226(a) ("*Except as provided in subsection (c)* ..., the Attorney General ... *may*" (emphases added)). "That express exception" to Section 1226(a)'s discretionary framework "implies that there are no *other* circumstances under which" detention is mandated for noncitizens, like [Lopez-Campos], who are subject to Section 1226(a). *Jennings*, 583 U.S. at 300 (citing A. SCALIA & B. GARNER, READING LAW 107 (2012)); *see Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010) ("that Congress has created specific exceptions" to the applicability of a statute or rule "proves" that the statute or rule generally applies absent those exceptions).

*Dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988 (D. Mass. Aug. 14, 2025). "If § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless" and this Court, too, "will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2)." *Maldonado v. Olsen*, No. 25-cv-3142, 2025 WL 237441, *12 (D. Minn. Aug. 15, 2025).

There can be no genuine dispute that Section 1226(a), and not Section 1225(b)(2)(A), applies to a noncitizen who has resided in this country for over twenty-six years and was already within the United States when apprehended and arrested during a traffic stop, and not upon arrival at the border.  The reading of the statutes supports this finding, as does every other Court that has had to address the distinction between Section 1225(b)(2)(A) and Section 1226(a).[5]  Therefore, the Court finds that Lopez-Campos is not subject to the provisions of Section 1225(b)(2)(A).  Rather, he clearly falls under the provision of Section 1226(a), and is subject to the discretionary bond determination outline therein.

## C.    DUE PROCESS

Finally, the Court must address whether the continued detention of Lopez-Campos is a violation of due process – and the Court finds that it is.

At the heart of the Fifth Amendment is the right to be free from deprivation of life, liberty or property without due process of law.  U.S. CONST. amend. V.

---

[5] *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025); *Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299 (D. Mass. July 7, 2025); *Martinez v. Hyde*, ---F. Supp. 3d ---, 1:25-cv-11613-BEM, 2025 WL 208438 (D. Mass. July 24, 2025); *Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal. July 28, 2025); *Rosado v. Figueroa et al.*, No. 2:25-cv-02157-DLR, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025); *Lopez Benitez v. Francis et al.*, ---F.Supp.3d----, No. 1:25-cv-05937-DEH, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Gonzalez et al. v. Noem et al.*, No. 5:25-cv-02054-ODW-BFM (C.D. Cal. Aug. 13, 2025); *Dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); *Maldonado v. Olson*, ---F.Supp.3d ----, No. 0:25-cv-03142-SRN-SGE, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Romero v. Hyde, et al.*, ---F.Supp.3d----, No. 1:25-cv-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Benitez et al. v. Noem et al.*, No. 5:25-cv-02190-RGK-AS (C.D. Cal. Aug. 26, 2025); *Kostak v. Trump et al.*, No. 3:25-cv-01093-JE-KDM (W.D. La. Aug. 27, 2025).

Liberty is one of the most basic and fundamental rights afforded and "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Due Process Clause extends to all "persons" regardless of status, including non-citizens (whether here lawfully, unlawfully, temporarily, or permanently). *Id.* at 693; *see also Reno v. Flores*, 507 U.S. 292, 306 (1993); *Chavez-Acosta v. Garland*, No. 22-3045, 2023 WL 246837, at \*4 (6th Cir. Jan. 18, 2023).

Respondents do not dispute that Lopez-Campos is entitled due process, rather it argues that the process due under Section 1225(b)(2)(A) was already afforded to him. *See* ECF No. 9, PageID.89-90. The Government asserts that in the immigration context, the Supreme Court has held that "due process under the constitution is coextensive with the removal procedures provided by Congress." *Id*. at PageID.89 (citing *Thuraissigiam*, 591 U.S. at 138-140). In essence, the Government argues that Section 1225(b)(2)(A) mandates detention; and thus, denial of a detention hearing is not a violation of due process. Especially in light of the fact that Lopez-Campos "was given notice of the charges against him, he has access to counsel, he has attended a hearing with an immigration judge, he has requested bond and has the right to appeal that decision, he has been detained by ICE for only five weeks and

he is scheduled for an evidentiary hearing on his application for cancelation of removal in less than two months." ECF No. 9, PageID.90.

If the Court agreed that Section 1225(b)(2)(A) applied to Lopez-Campos, the Government's assessment may be true. But it does not; and the Court has specifically held that Section 1226(a) governs Lopez-Campos' detention, therefore the process due to him is that which is afforded under Section 1226(a). The discretionary bond framework under Section 1226(a) requires a bond hearing to make an individualized custody determination – a hearing the IJ did not conduct. Therefore, without first evaluating Lopez-Campos' risk of flight or dangerousness, his detention is a violation of his due process rights.

The Sixth Circuit has also applied the balancing test laid out in *Mathews v. Eldrige*, 424 U.S. 319 (1976), to determine the adequacy of process in the context of civil immigration confinement. *See, e.g.*, *United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020). Those factors include: (1) the private interest that will be affected by official action; (2) the risk of erroneous deprivation of that interest; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures entail. *Mathews,* 424 at 335. Here, all three factors weigh in favor of affording Lopez-Campos with a detention hearing. First, his liberty is at stake. Second, the risk of erroneously depriving him of his freedom is high if the IJ fails to assess his risk of flight and dangerousness.

And third, on the record currently before the Court, given the history and characteristics of this Petitioner, the Government has not and likely cannot show that it has a significant interest in Lopez-Campos' continued detention.

Accordingly, the Court agrees that detention of Lopez-Campos under the mandatory detention framework is a violation of his due process rights.

## IV.

Section 1226(a) of the INA recognizes that the core and "most elemental of liberty interests" is to be free from restraint and physical detention. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). For centuries, the Government has acted in accordance with these principles. The recent shift to use the mandatory detention framework under Section 1225(b)(2)(A) is not only wrong but also fundamentally unfair. In a nation of laws vetted and implemented by Congress, we don't get to arbitrarily choose which laws we feel like following when they best suit our interests. It is clear to this Court that the plain language of both Section 1226(a) and Section 1225(b)(2)(A) mandate a finding that Lopez-Campos is entitled to a detention hearing pending his removal proceedings. Because the Immigration Court is in the best position to evaluate Petitioner's risk of non-appearance and dangerousness, this Court leaves to its sound discretion a determination on that issue.

Accordingly, Lopez-Campos' Petition for Writ of Habeas Corpus (ECF No. 1) is **GRANTED**. Respondents are **HEREBY ORDERED** to immediately release

Lopez-Campos, or in the alternative, provide him with a bond hearing under 8 U.S.C. § 1226(a) within seven (7) days of the date of this Order.

**IT IS FURTHER ORDERED** that Respondents are **ENJOINED** from pursuing detention on the basis of 8 U.S.C. § 1225(b)(2)(A).

**IT IS FURTHER ORDERED** that Respondents shall file a Status Report with this Court on or before September 8, 2025, to certify compliance with this Order.  The Status Report shall include if and when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

**IT IS SO ORDERED.**

Dated:  August 29, 2025                          s/Brandy R. McMillion
     Detroit, Michigan                     HON. BRANDY R. MCMILLION
                               United States District Judge